**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES POWERS, on his own** | : | **CIVIL ACTION** |
| **behalf and on behalf of the** | : | |
| **class defined herein, and CYNTHIA ANN** | : | **NO. 06-2993** |
| **POWERS,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LYCOMING ENGINES, a Division of** | : | |
| **AVCO CORPORATION; AVCO** | : | |
| **CORPORATION; and TEXTRON, INC.** | : | |

| | | |
|---|---|---|
| **PLANE TIME, LLC, on its own behalf and** | : | **CIVIL ACTION** |
| **on behalf of others similarly situated,** | : | |
| | : | **NO. 06-4228** |
| **v.** | : | |
| | : | |
| **LYCOMING ENGINES, a Division of** | : | |
| **AVCO CORPORATION; AVCO** | : | |
| **CORPORATION; and TEXTRON, INC.** | : | |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                **September 25, 2007**

In these consolidated putative class actions, the plaintiffs move to represent a class

of owners or previous owners of aircraft that contain allegedly defective engine crankshafts

designed and built by Lycoming Engines.[1]  They claim that the engines were manufactured

with defective crankshafts that can cause a total loss of engine power and in-flight engine

failures, and that Lycoming knew and concealed the defect that prevents the crankshafts

from functioning as intended.  They seek damages for the cost to replace the defective

---

[1] The plaintiffs named three defendants, Lycoming Engines, Avco Corporation and Textron, Inc.
Since the motion for certification was filed, Textron has been dismissed.  The two remaining defendants are
referred to collectively as "Lycoming."

crankshafts, which includes parts, labor, transportation, storage, insurance; the loss of the use of the aircraft while the crankshafts are being replaced; and the diminished value of the aircraft.

Lycoming contends that the case is inappropriate for class certification because the facts as to both liability and damages are not common to all members of the putative class, the claims and defenses of the named plaintiffs are not typical of the class, and individual issues will predominate over the common issues.  It  argues that whether a given engine or crankshaft is defective, whether the planes containing the subject crankshafts were purchased used or new and when each plaintiff had or has the crankshaft replaced are questions peculiar to each individual plaintiff and not amenable to class certification.

Contrary to Lycoming's contentions, the requirements of Rule 23(a) are satisfied, and a class action is superior to other methods for the fair and efficient adjudication of the issues, qualifying it under Rule 23(b)(3).[2]  The class is ascertainable and sufficiently definite.  With more than 3000 potential plaintiffs, there is numerosity.  Commonality exists because there are common fact questions regarding what and when Lycoming knew of the alleged defect.  Typicality is established because each member's claim arises from the same course of events and each class member will make the same legal arguments to prove liability.  Common questions predominate over individual ones.  Therefore, the motion for class certification will be granted.

### I.  Factual Background

The Federal Aviation Administration ("FAA") mandates that the type of engines at

---

[2] *See* Fed. R. Civ. P. 23(a) and (b)(3).

issue be overhauled after every 2,000 hours of flying time or within twelve years, whichever occurs first.  The crankshafts are not typically replaced during these overhauls.  Thus, unlike other parts of an aircraft engine that must be replaced at regular intervals, crankshafts are expected to last the life of a regularly maintained aircraft.

On February 21 and April 11, 2006, Lycoming issued two Mandatory Service Bulletins ("MSB"), 569 and 569A, requiring owners of the subject engines to retire and replace more than 4000 potentially defective crankshafts that were manufactured between 1997 and 2002.  The MSBs set a replacement deadline of the earliest of:  February 21, 2009; the next time the engine crankcase is separated to allow inspection or replacement of parts; or at the next maintenance overhaul.[3]

On May 25, 2006, the FAA issued a proposed Airworthiness Directive ("AD") mandating replacement of the same crankshafts addressed in the MSB.  The FAA concluded that an "unsafe condition exists" because the "same metallurgical flaw that was found in 23 confirmed crankshaft failures in different groups of Lycoming 360 and 540 engines [which were covered in earlier MSB's issued in 2002 and 2005] has been found in the crankshafts of this group of engines."[4]  The AD warned that if the crankshafts are not replaced, they will "result in total engine power loss, in-flight engine failure, and possible loss of the aircraft."  The AD set a crankshaft replacement deadline of the earliest of the next separation of the engine crankcase, the next engine overhaul, or 12 years from the date the crankshaft first entered service or was last overhauled.  The AD became final on

---

[3] During an overhaul, the crankshaft is separated from the engine.

[4] AD 2006-20-09, 21 Fed Reg. 57407, at 57408, attached as Ex. D to *Defs. Reply and Supplement in Further Support of Mot. to Dismiss* (Doc. No. 15).

September 29, 2006, and effective November 3, 2006.

Plaintiffs claim that Lycoming had known for years that its crankshafts were unsafe and likely to fail.  Based on several field reports of broken crankshafts Lycoming had received in 2002, it issued MSBs, which were followed by FAA action that grounded hundreds of aircraft with faulty crankshafts.  At that time, Lycoming purportedly paid $35 million to remove, ship and replace the defective crankshafts.  In 2005, Lycoming issued two more MSBs and replaced the crankshafts covered by those MSBs at its expense.

Lycoming refuses to pay all costs associated with replacing the crankshafts subject to the most recent MSBs and the AD issued in 2006.  It will replace the crankshafts for free if the owners have the engines overhauled at a Lycoming facility in Pennsylvania, or will pay $14,000 of a $16,000 price for a "crankshaft and parts" kit for owners who replace the crankshafts elsewhere.  After February of 2009, it will pay nothing for the replacement kits. It refuses to pay costs for labor, shipping, alternative transportation, loss of use or other incidental costs regardless of where and by whom the replacement is done.

## II.  Procedural History

Plaintiff Charles Powers, a Maryland resident, filed his initial complaint on July 10, 2006, in which he sought to represent himself and a class of other purchasers of an aircraft containing an engine with a crankshaft subject to MSBs 569 and 569A.  In his initial complaint, Powers asserted claims of negligence, unjust enrichment and violation of state unfair trade practices statutes, including Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(4)(xxi).

Plaintiff John Car, a South Carolina resident, in his capacity as "beneficial owner" of an aircraft containing a crankshaft subject to MSBs 569 and 569A, filed his first

complaint on September 21, 2006, on behalf of himself and all others similarly situated, excluding California residents, asserting claims of negligence and unjust enrichment.[5]

Lycoming filed a motion to dismiss the *Powers* complaint on September 11, 2006. After consolidating the *Powers* and *Car* cases on October 6, 2006, the motion to dismiss was deemed applicable to the *Car* complaint as well.

After oral argument on the class certification motion, the plaintiffs filed an Amended Consolidated Complaint.  The amended complaint added Charles Powers' wife, Cynthia,[6] as a plaintiff; substituted Plane Time, LLC for John Car as a plaintiff;[7] deleted the negligence claim; and, added causes of action for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose.  The consumer protection and unjust enrichment causes of action were retained in the amended complaint.  The plaintiffs later withdrew the claims for breach of implied warranty of fitness for a particular purpose,[8] and for violations of unfair trade practices,[9] leaving only the unjust enrichment and breach of warranty of merchantability causes of action.

### III.  Conflict of Laws

Conflicts among the states' laws arise in the treatment of the causes of action set

---

[5] California residents were excluded because in August of 2006, a putative class action was filed in California on behalf of all California residents who purchased engines subject to MSB 569 and 569A.  *See Bristow v. Lycoming Engines, et al.*, No. Civ. S-06-1947 LKK/GGH, 2007 WL 1106098 (April 10, 2007 E.D. Cal.) (Karlton, J.).  On November 13, 2006, the plaintiffs in the California action filed a motion to transfer and centralize the three cases to an MDL, which request was denied on February 9, 2007.

[6] Cynthia Powers is a co-owner of the aircraft.

[7] Although Car is the sole owner of Plane Time, LLC, that entity is the actual owner of the plane at issue.

[8] *See Pls.' Supplemental Mem. in Support of Mot. for Class Certification* (Doc. No. 62) at 1 n. 1.

[9] *See Pls.' Notice of Voluntary Dismissal of Third Cause of Action* (Doc. No. 98).

forth in the amended complaint.   Irreconcilable conflicts can be an impediment to certification.   Because those conflicts affect the analysis of the typicality and adequacy requirements of Rule 23(a), and the manageability factor of the Rule 23(b)(3)(D) superiority test, the conflicts issues will be resolved before the class certification requirements are analyzed.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state.   *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).   Accordingly, Pennsylvania choice of law rules apply here.

Pennsylvania uses a two-step process to resolve choice-of-law questions.   The court must first determine whether there is a real conflict.   Mere differences in the states' laws do not necessarily constitute actual conflicts.   *Id.*   Only where a state's governmental interests are frustrated by application of another state's law is there an actual conflict.   *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991).   In other words, there is no conflict where the application of either state's law renders the same result.   *Berg Chilling*, 435 F.3d at 462.

If there is a true conflict, the court proceeds to the second step and decides which state has the greater interest in the application of its law.   *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996) (*citing Cipolla v. Shaposka*, 267 A.2d 854, 855 (Pa. 1970)). This flexible inquiry uses the *Restatement (Second) of Conflict of Laws* as a guide to evaluate the significance of the contacts, and the relationship of the states to the parties and the dispute.   *See Berg Chilling*, 435 F.3d at 463; *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005).   After characterizing the nature of the issue as founded in contract, tort or a hybrid, the court uses the appropriate *Restatement* section identifying the

most relevant contacts for that type of action to assess which state has the more significant relationship and contacts to the issue.  *Berg Chilling*, 435 F.3d at 463, 467; *Garcia*, 421 F.3d at 220.  The contacts are weighed qualitatively within the context of the competing policies and interests of each state.  *Berg Chilling*, 435 F.3d at 467-68; *In re Estate of Agostini*, 457 A.2d 861, 871 (Pa. Super. Ct. 1983) (*citing Cipolla*, 267 A.2d at 856).  After balancing the respective governmental policy interests of the affected states, the court applies the law of the state having the greater interest in the determination of the issue. *Garcia*, 421 F.3d at 220.

Which Restatement section applies depends on how the issue to be litigated is characterized.  Section 188 of the *Restatement* governs contract actions; § 145, tort actions; and § 148, fraud and misrepresentation.  Section 188 instructs that the law of the state which has the most significant relationship with the transaction and the parties applies.  It lists the following factors to consider:  where the contract was made, where the contract was negotiated, the place of performance, the location of the subject matter of the contract, and where the parties reside and do business.  The provision also states that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."  *Restatement (Second) of Conflict of Laws* § 188 (1971).

Section 145, which covers torts, considers where the injury occurred, where the conduct causing the injury occurred, the domicile of the parties and where the relationship between the parties is centered.  Section 148, covering fraud and misrepresentation, takes into account primarily where the defendant made the misrepresentations, and where the

plaintiff received and relied upon them.[10]

In this action, § 188 is applicable to the plaintiffs' implied warranty claim because it arises from a contract. A "hybrid" approach, using §§ 188 and 148, is amenable for the unjust enrichment claim because it has both fraud or misrepresentation and contract elements.

### Choice of Law and the Unjust Enrichment Claim

Plaintiffs concede that there are conflicts between the unjust enrichment laws of Pennsylvania and the laws of at least eight other states.[11] In fact, there are numerous differences in unjust enrichment laws among many states. However, most of those differences do not create actual conflicts. Where they do, Pennsylvania has a greater interest in applying its law.

---

[10] Specifically, *Restatement* § 148(2) states:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issues, has the most significant relationship to the occurrence and the parties:
>
> > (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> > (b) the place where the plaintiff received the representations,
> > (c) the place where the defendant made the representations,
> > (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
> > (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> > (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

[11] For purposes of the motion for class certification, the District of Columbia is considered a "state," and the state of California is not part of the analysis.

The legal elements required to establish a claim for unjust enrichment vary from state to state. They fall into four basic categories. One group of states[12] requires proof of essentially the same three elements: (1) a benefit is conferred upon the defendant; (2) at the plaintiff's expense; (3) under circumstances that would make defendant's retention unjust.

A second group[13] requires proof of five separate elements, which are similar to the elements required by the states in the first group. The five elements of the cause of action in these states are: (1) an enrichment; (2) an economic detriment or loss; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy.

A third group,[14] the largest, includes an additional element, that the defendant appreciated the benefit conferred upon it. To satisfy this element, the defendant must have had knowledge or awareness that it was, in fact, receiving a benefit.[15] The necessary level of this awareness varies from jurisdiction to jurisdiction. In two states, Alabama and Texas, the defendant must have engaged in fraud, coercion, or other intentional conduct to induce the benefit. In twenty other states, a defendant's mere awareness of receipt of a benefit at the plaintiff's expense will suffice. This element is not an issue where the

---

[12] Colorado, Connecticut, District of Columbia, Illinois, Indiana, Iowa, Michigan, Nebraska, Nevada, New Hampshire, New Jersey and New York.

[13] Arizona, Delaware, Louisiana and North Dakota.

[14] Alabama, Alaska, Florida, Idaho, Kansas, Maine, Maryland, Missouri, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Wisconsin and Wyoming.

[15] This is in contrast to states that allow recovery on a claim for unjust enrichment even if the party retaining the benefit is not a wrongdoer or mistakenly received the benefit. *See, e.g., Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999); *Richland Cty. v. State*, 180 N.W.2d 649, 655 (N.D. 1970).

defendant failed to disclose a known defect because it had to have known it was getting a benefit.

A fourth group[16] provides a more general description of unjust enrichment without delineating specific elements.  To establish an unjust enrichment claim in these states, the plaintiff must prove that the defendant received something of value from the plaintiff and that it would violate the fundamental  principles of justice, equity and good conscience for the defendant to retain the benefit without compensating the plaintiff.  These concepts are similar to the legal elements in the first category of states.

Although there are numerous permutations of the elements of the cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements - the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Application of another variation of the cause of action than that subscribed to by a state will not frustrate or infringe upon that state's interests.  In other words, regardless of which state's unjust enrichment elements are applied, the result is the same.  Thus, there is no real conflict surrounding the elements of the cause of action.

Even though the legal elements of an unjust enrichment cause of action are essentially similar among the states, there are differences in how they are applied and interpreted.  A significant difference is that most states, including Pennsylvania, preclude

---

[16] Arkansas, Georgia, Hawaii, Kentucky, Massachusetts, Minnesota, Mississippi, Montana, Oklahoma, Vermont, Washington, and West Virginia.

recovery on an unjust enrichment theory if an express contract governs the relationship between the parties.  Among those states, at least five have carved out exceptions to this general rule, allowing recovery on an unjust enrichment claim despite an express contract.[17]

The plaintiffs acknowledge that Lycoming had issued a written warranty that may preclude them from pursuing an unjust enrichment claim under Pennsylvania law.[18] However, they assert that if the warranty is found to be unconscionable and unenforceable, they may proceed on the unjust enrichment claim.  In some states, the plaintiffs can recover under an unjust enrichment theory even if an express contract governs the relationship; but, they will not be permitted to assert such a claim under Pennsylvania law if the contract is enforced.  Stated differently, the defendant manufacturer could not assert the contractual bar in those other states as it could in Pennsylvania.  Thus, there is a real conflict with those states and Pennsylvania.

After weighing the factors under *Restatement* §§ 188 and 148, the balance tilts in favor of applying Pennsylvania law.  Pennsylvania has the most significant relationship to the transaction and the parties.  It is the center of the activities that gave rise to the claims.

---

[17] *See, e.g., Interbank Investments LLC v. Eagle River*, 77 P.3d 814, 816 (Col. Ct. App. 2003) (allowing recovery "on a quasi-contract when the party will have no right under an enforceable contract"); *Combustion Eng'g, Inc. v. Miller Hydro Group*, 812 F. Supp. 260, 262-63 (D. Me. 1992) ("Maine has no absolute rule barring recovery [under unjust enrichment] in the presence of a valid contract"); *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 608-09 (8th Cir. [Ark.]1999) (rule precluding recovery under unjust enrichment when there is an express contract subject to several qualifications; *Westmont Tractor Co. v. Viking Exploration, Inc.*, 543 F. Supp. 1314, 1321 (D. Mont. 1982) ("recovery in quantum meruit is appropriate in an action brought on an express or special contract where there exists an unusual and equitable reason for such recovery and the particular situation seems to justify it"); *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) (the "mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery.  A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already received the benefit of her contractual bargain").

[18] *Pls.' Response in Opposition to Defendants' Mot. to Dismiss* (Doc. No. 14) at 14; *Pls.' Supplemental Response in Opposition to Defendants' Mot. to Dismiss* (Doc. No. 60) at 7.

Lycoming is a Pennsylvania manufacturer that has been sued here, where it manufactured the crankshafts and engines.  Lycoming issued service bulletins and instructions, communicated orally and in writing about the crankshafts and sent press releases from its headquarters in Pennsylvania, and plans to replace crankshafts here.

On the other hand, the contacts with the plaintiffs presumably took place in their home states where they purchased, operate, and moor their aircraft.  Yet, considering the mobility of a plane, it could have been purchased and transported from a state other than a plaintiff's home state.  Because Lycoming's engines are part of aircraft manufactured by others, it is unlikely that the plaintiffs purchased the aircraft in reliance on anything Lycoming may have represented.  Consequently, the place where the false representations were received is not a factor.  The  § 148 factors do not impact as heavily as those in § 188, which weigh in favor of Pennsylvania in the context of the contractual bar.  Therefore, Pennsylvania's interest in allowing its resident manufacturer to invoke its contractual rights where it has been sued for conduct occurring here and where it received the benefit of its conduct is greater than the interests of those states where the warranty issue is nonexistent.

Not only are there variations among the states' laws regarding the legal elements and potential defenses, there are also differences as to who may bring an unjust enrichment claim.  Three jurisdictions preclude indirect purchasers from asserting claims for unjust enrichment unless they have conferred a benefit directly on the defendant.[19]  In these states, the rationale for the requirement is to insulate a defendant that is far removed

---

[19] Florida, Idaho and Ohio.

from any wrongdoing from liability for a benefit he may have inadvertently or unknowingly received.

In contrast, nine other states have explicitly determined that an indirect benefit is enough.[20]  These states have allowed indirect purchasers to establish claims for unjust enrichment so long as they can prove that the defendant benefitted at the plaintiff's expense, even if the benefit flowed indirectly from the plaintiff to the defendant.  The remaining states' laws have either implicitly accepted unjust enrichment claims based on an indirect benefit or have not addressed the issue.

The engine is a component part of the aircraft.  It was not purchased from Lycoming by the aircraft owner, but by the plane's manufacturer or a dealer.  Hence, the class members, with few, if any, exceptions, are indirect purchasers.

To apply Pennsylvania law, which permits indirect purchasers to recover, would infringe those other states' laws because Lycoming could not be sued by the indirect purchasers in those states.  Thus, there is a real conflict in those instances.

Applying the *Restatement* factors, Pennsylvania has the greatest interest in the application of its law.  The defendant is incorporated and headquartered in Pennsylvania where it manufactured the crankshafts and received the benefit of its conduct, and the alleged defect existed from the time the crankshaft left Pennsylvania.  Therefore, Pennsylvania law will apply to the unjust enrichment cause of action.

*Choice of Law and the Warranty of Merchantability Claim*

The law of implied warranty of merchantability, unlike the law of unjust enrichment,

---

[20] Illinois, Iowa, Kansas, Maryland, Massachusetts, Michigan, New York, Pennsylvania and Tennessee.

is not as varied among the states.  Except for Louisiana, all states have adopted U.C.C. § 2-314, which provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale.[21]  U.C.C. § 2-314 (2003).  Thus, all states, but one, share the common source of law.

There are, nevertheless, differences among the states regarding the application of implied warranty of merchantability law.  The most significant difference is the privity requirement.  Thirty-five states, including Pennsylvania, do not require privity of contract to recover for breach of the implied warranty of merchantability where only economic damages are involved.  Thus, there is no conflict between the warranty of merchantability laws of these thirty-four states and that of Pennsylvania.[22]

With respect to the fourteen states that still require privity between the parties in cases involving purely economic loss,[23] the plaintiffs argue that there is either no actual conflict between the laws of Pennsylvania and those of these fourteen states; or, if there is, Pennsylvania has a greater interest in applying its law to the claims of the residents of these states than do the other states.

In abolishing the privity requirement in all warranty actions four decades ago, the Pennsylvania Supreme Court determined that continuing such a requirement would "perpetuat[e] a needless chain of actions, whereby each buyer must seek redress from his own immediate seller, up the chain, until the actual manufacturer is eventually reached."

---

[21] Louisiana's implied warranty law provides for relief when a defect renders a product useless or diminishes its usefulness or value.  *See* La. Civ. Code Ann. art. 2520.

[22] Louisiana does not require privity.

[23] These states are: Alabama, Arizona, Georgia, Idaho, Illinois, Iowa, Kentucky, New York, North Carolina, Ohio, Oregon, Tennessee, Vermont and Wisconsin.

*Kassab v. Central Soya*, 246 A.2d 848, 856 (Pa. 1968).  It observed that the privity requirement ignored the commercial reality that the typical purchaser buys from a retail merchant who is usually no more than an "economic conduit" between the purchaser and the manufacturer of the defective product.  *Id.* at 853.

The plaintiffs contend that the national trend is toward abolishing the privity requirement,[24] even in the remaining fourteen states that still have remnants of the requirement.  They argue that the bases for the privity requirement in nine of those states do not apply in this case either because the policies underlying the rule are not advanced or there is no legitimate interest to do so.[25]  As to the five states whose laws they concede directly conflict with Pennsylvania law,[26] the plaintiffs contend that Pennsylvania has the stronger interest in having its law applied than do the other states.

The question is whether the competing states' governmental interests are frustrated by application of the other states' laws.  In the fourteen states that maintain a privity requirement in implied warranty claims involving solely economic loss, the purpose of the requirement is to protect "remote manufacturers."  For example, in some states, the stated

---

[24] The public policy argument behind abolishing the privity requirement is that it promotes judicial economy to allow the end purchaser to bring an action directly against the manufacturer, avoiding the unnecessary litigation that would be required if the purchaser were forced to bring an action against the dealer, who in turn could bring an action against the manufacturer.  *See* Clark, Barkley and Christopher Smith, *The Law of Prod. Warranties*, § 10:20 (West 2006).

[25] Plaintiffs point to three states – Idaho, North Carolina and Wisconsin – which have suggested that they would be willing to abandon the privity requirement if presented with an appropriate case. *See Ramerth v. Hart*, 983 P.2d 848, 852 (Idaho 1999); *Gregory v. Atrium Door and Window Co.*, 415 S.E.2d 574, 575 (N.C. Ct. App. 1992); *Strahlendorf v. Walgreen Co.*, 114 N.W.2d 823, 830-31 (Wis. 1962).  In those cases, the courts recognized that the privity requirement sometimes precluded plaintiffs from obtaining relief or compensation for their economic loss.  Because the specific plaintiffs in those cases were not precluded from recovery, the courts deemed it unnecessary to change the rule, but intimated that it may be abolished in the future.

[26] Arizona, Illinois, New York, Oregon, Vermont.

policy reason is to limit the damages for which remote manufacturers will be held liable, and provide foreseeability as to potential claimants.[27]   In one state, the goal is to preserve a manufacturer's right to disclaim a warranty because it would be difficult for a manufacturer to issue disclaimers to purchasers with whom it had no contact.[28]   Other states defer to contracting parties to determine the scope of the manufacturer's obligations and liability, using traditional contract principles where there is no damage to other property or personal injury.[29]  One state maintains the privity requirement because litigation between a direct buyer and seller is simpler and less costly.[30]

In light of these policy reasons, there is a real conflict between the application of Pennsylvania law and the laws of the fourteen states that require privity.  Allowing the plaintiffs to sue a manufacturer with whom they did not deal directly will frustrate the interests of those states that do not permit it.  On the other hand, insulating Lycoming from suit will frustrate Pennsylvania's interest in bypassing privity.  Therefore, there is a real conflict, requiring a balancing of the respective interests of the states.

The balancing test results in the application of Pennsylvania law.  The manufacturer is located in Pennsylvania, the interest of the fourteen privity states in protecting a resident manufacturer is absent, the manufacturer's right to disclaim a warranty will be preserved, and the goal of saving costs will not be thwarted by the application of Pennsylvania law. At the same time, Pennsylvania's interest in avoiding a needless multiplicity of actions

---

[27] Idaho, Illinois, North Carolina, Ohio and Wisconsin.

[28] Iowa.

[29] Alabama, Kentucky, Georgia, New York, Oregon, Tennessee and Vermont.

[30] Arizona.

where each buyer would have to sue his own seller and those up the distribution chain until the actual manufacturer is reached will be advanced by applying its state law. Application of Pennsylvania law will not impinge on the interests of states that retain the privity requirement in the interest of reducing litigation and costs. The litigation and its attendant costs will take place in Pennsylvania at one time, not many times in those other states. Therefore, Pennsylvania law will apply to the breach of implied warranty claims of the residents of the fourteen states that require privity of contract.

Lycoming argues that additional conflicts among the states' laws exist, rendering the implied warranty claim inappropriate for certification. First, it states that different jurisdictions have different standards to satisfy the U.C.C. § 2-607(c) notice of breach requirement, which provides that "where a tender has been accepted, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." U.C.C. § 2-607 (2003). Lycoming contends the issue of whether notice of breach was given "will have to be resolved by the court on a plaintiff-by-plaintiff basis."[31] Plaintiffs retort that notice is a procedural matter and federal courts sitting in diversity apply state substantive law and federal procedural law.

Even if considered a substantive matter, notice of breach is not an issue. The determination of whether the class members provided adequate notice of the breach will not vary from plaintiff to plaintiff. The plaintiffs allege that all of the proposed class members learned of the defective crankshafts when MSBs 569 and 569A were issued, and

---

[31] *Defs.' Second Supplemental Memo. of Law in Opposition to Pls.' Mot. for Class Certification* (Doc. No. 86) at 7.

Lycoming was put on notice of the breach upon the issuance of the AD and the filing of the lawsuit.  Indeed, when it issued the MSBs, Lycoming put itself on notice.

Lycoming also points to differences among jurisdictions in the application of implied warranty law to used goods in that the standard of merchantability is lower or nonexistent for used goods in some jurisdictions.[32]  Although only two jurisdictions, Alabama and Texas, do not recognize implied warranties in the sale of used goods, most states apply a somewhat lower standard of merchantability to used goods.  These states follow the standard set forth in Comment 3 to U.C.C. § 2-314, which provides that a "contract for the sale of second-hand goods . . . involves only such obligation as is appropriate to such goods."  This standard recognizes that used goods ordinarily require more maintenance and repair than new products.

The differences with respect to used goods is not an issue here.  The claim is that the crankshafts were defective when they were new and left Lycoming's facility, and that the damage is the same no matter how old or used the aircraft or engine was when the plaintiff purchased it.  Therefore, whether the plane, engine or crankshaft was new or used when each plaintiff "acquired" the subject crankshaft will not affect its merchantability.

Finally, Lycoming contends that there is a "major difference" between the laws of Louisiana and the other states.  There is no actual conflict between Louisiana's implied merchantability law and § 2-314.  Louisiana law provides for relief when a defect renders a product useless or diminishes its usefulness or value, *see* La. Civ. Code Ann. art. 2520,

---

[32] *Defs.' Supplemental Memo. of Law in Opposition to Pls.' Mot. for Class Certification* (Doc. No. 74) at 13-14.  According to the amended complaint, the Powers aircraft was purchased new in 1978, and a crankshaft subject to MSB 569A was installed in the engine during an overhaul in April of 2002.  *Amended Compl.* ¶¶ 7-8.  Plane Time purchased its 2002 aircraft in 2004, and the defective crankshaft was replaced in that aircraft on November 14, 2006.  *Amended Compl.* ¶¶ 10-12.

while U.C.C. § 2-314 provides for relief if a product is not merchantable or not fit for the ordinary purposes for which it is used.  Whether a defect renders a product useless, less useful or not merchantable requires the consideration of similar factors.  Therefore, Louisiana's interest would not be frustrated by the application of Pennsylvania's implied warranty law.

There are few conflicts among the various states' laws on the implied warranty of merchantability cause of action.  Where conflicts exist, Pennsylvania has a greater interest in applying its law.  Therefore, Pennsylvania law will also apply to the implied warranty claim.

## IV.  Legal Standards for Class Certification

To be certified, a class must satisfy all four requirements of Rule 23(a) and must fit one of the provisions of Rule 23(b).  The plaintiffs must demonstrate  that:  (1) the size of the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses are typical of the class; and (4) the representatives will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(1)-(4).  Additionally, the proposed class action must be one of the types recognized by Rule 23(b).  Here, plaintiffs have moved for certification only under subsection (b)(3), which requires a finding that common questions of law or fact predominate over questions affecting only individual class members, and that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

The burden is on the plaintiffs to demonstrate that a class should be certified. *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001); *Baby Neal v. Casey*,

43 F.3d 48, 55 (3d Cir. 1994).  Though the plaintiffs need not establish the merits of their case at the class certification stage and the substantive allegations of the complaint must be taken as true, *Chiang v. Veneman*, 385 F.3d 256, 262 (3d Cir. 2004) (*citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)), a court must conduct a rigorous analysis to determine the suitability of resolving the issues in a class action.  Because certification and the merits are intertwined, this analysis necessitates a factual inquiry. *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006) (*citing Newton v. Merrill Lynch, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001)).  Nonetheless, a court may not determine the merits of the plaintiff's case.  *Eisen*, 417 U.S. at 177-78.  Thus, one must look beyond the complaint and consider the substantive elements of the plaintiffs' cases. *See Newton*, 259 F.3d at 166-68.

*Numerosity*

Based on the FAA's identification of 3,774 engines subject to MSB 569A, the class has potentially 3,774 members.  Although Lycoming has stated in its briefs and at oral argument that they do not contest numerosity, it argues the class will have "considerably" fewer members than 3,774, pointing out that some owners live outside the United States and some planes have more than one engine.  Yet, it does not approximate how much the membership would be reduced.

Whether the number of potential class members is what the plaintiffs contend or is less as the defendants argue, there are more than enough to satisfy numerosity.

*Commonality*

Commonality requires that the plaintiffs share a question of law or fact with the prospective class members.  The commonality threshold is low.  So long as the named

plaintiffs share at least one question of fact or law with the grievances of the prospective class, the existence of individual facts and circumstances will not defeat commonality. *Baby Neal*, 43 F.3d at 56.

Among the questions of fact common to all putative class members are what Lycoming knew about the allegedly defective crankshafts and when it knew it. Those facts will not change regardless of who the class member is. Commonality has been met with respect to these fact issues.

Because there are common fact issues, there is no need to find common legal issues. Nevertheless, as the conflict of laws discussion demonstrates, the legal issues implicating liability are common to the class.

*Typicality*

The typicality prong of Rule 23(a) requires that the claims or defenses of the plaintiffs are typical of the class. Fed. R. Civ. P. 23(a)(3). Typicality requires a strong similarity of legal theories to ensure that the class representatives' pursuit of their own goals will work to benefit the entire class. *Barnes v. Am. Tobacco* Co., 161 F.3d 127, 141 (3d Cir. 1998); *Jones v. GPU, Inc.*, 234 F.R.D. 82, 97 (E.D. Pa. 2005). It entails an inquiry as to whether "the named plaintiff's individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Baby Neal*, 43 F.3d at 57-58 (*quoting Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)). Moreover, "[w]here the defendant can raise unique defenses to each plaintiff's claim, typicality may not exist if the defenses could threaten to become the focus of the litigation." *Jones*, 234 F.R.D. at 98. At the same time, "factual differences will not render a claim atypical if the claim arises

from the same event or practice or course of conduct that gives rise to the claims of the

class members, and if it is based on the same legal theory." *Baby Neal,* 43 F.3d at 58

(*quoting Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)).  Unlike

the commonality requirement, typicality requires more than "one unifying factual or legal

question."  *In re Paxil Litig.*, 212 F.R.D. 539, 550 (C.D. Cal. 2003).

Lycoming argues that neither the plaintiffs nor their claims are typical of the class.

It points out that Plane Time has already complied with the AD and cannot claim dimunition

in value and, in contrast, the Powers have not yet had the crankshaft replaced.  According

to Lycoming, a class member who complies with the AD may or may not incur any

replacement costs, depending on where the engine is overhauled and if it is done before

or after February 2009.  Lycoming notes that Plane Time bought a 2002 plane in 2004,

which contained a new engine installed when the aircraft was manufactured.  Powers, on

the other hand, bought a new plane in 1978 that had a used, factory overhauled engine

covered by MSB 569A  installed in the aircraft in 2002.  Lycoming contends that this may

affect the viability of the plaintiffs' breach of implied warranty claims because the standard

of merchantability is lower or nonexistent for used goods in some jurisdictions.[33]

These factual and legal differences are inconsequential and do not affect typicality.

The differences between the plaintiffs regarding damages are not problematic.  Although

there are five different categories of damages that any class member can claim,[34] these

---

[33] *Defs.' Supplemental Memo. of Law in Opposition to Pls.' Mot. for Class  Certification* (Doc. No. 74) at 13-14.

[34] Specifically, class members can incur costs from either: (1) replacing the crankshaft at an overhaul before 2009 at a Lycoming facility, where the new crankshaft and other replacement parts are free, but the cost of the overhaul and freight charges are higher than if the overhaul were performed at another FAA authorized facility, downtime is increased and labor charges for replacing the crankshaft will accrue; (2) replacing the crankshaft during an overhaul before 2009 at a non-Lycoming facility, where the new crankshaft

differences do not vary significantly.  Similarly, whether the planes or engines in the planes were new or used when purchased does not affect typicality.  It does not matter if the crankshafts are in a new or used plane or engine.  The claim is that the crankshafts were defective when they were new and left Lycoming's facility.  Liability and damages are the same whether the aircraft or engine was new or used when the plaintiff purchased it.

Because each member's claim arises from the same course of events and each class member will make the same or similar legal arguments to prove liability, typicality is established.

*Adequacy of Representation*

Rule 23(a)(4) aims to protect the interests of the class.  There are two parts to this test.  The first goes to the competency of counsel, and the second, to the plaintiffs' motivation and ability to protect the interests of the other class members.

Lycoming does not contest counsel's competency to prosecute a class action.  Class counsel have litigated other class actions.  Thus, the first part of the adequacy requirement is not at issue.

The second prong of the adequacy of representation requirement tends to merge with the commonality and typicality requirements of Rule 23(a).  *Jones*, 234 F.R.D. at 98.  As previously determined, the plaintiffs have met the commonality and typicality requirements.

Lycoming has not presented any plausible reason why the plaintiffs are inadequate

---

and replacement parts will cost $2,000 plus labor charges for replacing the crankshaft; (3) replacing the crankshaft at an overhaul after 2009, where the new crankshaft and replacement parts will cost $16,000 and labor charges will accrue; (4) replacing the crankshaft in advance of an overhaul, where the new crankshaft and replacement parts will cost $16,000 plus labor charges to remove and reinstall the engine; or (5) selling the plane prior to replacing the crankshaft at a diminished value.

representatives.  Nor is there any.  The plaintiffs' interests are not dissimilar to those of the proposed class.  They have no incentive to take a position that could benefit them at the expense of the remaining members.  Therefore, adequacy is established.

*Predominance and Superiority*

Plaintiffs have moved for certification under subsection 23(b)(3), which requires that common questions of law or fact predominate over questions affecting only individual class members, and that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Thus, the plaintiffs must satisfy both the predominance and the superiority aspects of Rule 23(b)(3).

In determining whether the action fits within Rule 23(b)(3), the Rule specifically directs the court to consider the interest of class members in individually controlling the litigation, the status of ongoing litigation brought by members of the class, the desirability of concentrating the litigation in the particular forum, and likely management difficulties.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  In the end, it is the interests of the individual members in controlling their own litigation that drives the certification decision on predominance.  The superiority analysis focuses on the advantages and disadvantages of using the class-action device in relation to other litigation methods.

Predominance

In a class action brought under Rule 23(b)(3), common questions of law or fact must predominate over questions affecting only individual members and must be a significant part of each individual case.  The predominance inquiry is "far more demanding" than the commonality requirement of Rule 23(a).  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

Rule 23(b)(3)

> encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. . . .
>
> It is only wh[en] predominance exists that economies can be achieved by means of the class-action device.

Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note.  Common issues will predominate when they "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  7A Wright & Miller, *Federal Practice and Procedure* § 1778 (2d ed. 1986).

In this case, the central liability issues are what and when Lycoming knew about the defects, and what warranties apply.  The resolution of these common issues will resolve a significant portion of the case for all class members.  Information peculiar to each individual class member is not necessary to make these determinations.  Each class member will seek to recover the same or similar damages caused by the same harm.  All assert that they sustained losses as a result of Lycoming's design, manufacture and sale of defective crankshafts.  Evidence regarding each class member's damages will be limited because the types and the amounts of damages that can be claimed are circumscribed and some are fixed.  Thus, because the few individual questions for determination are not complex and can be answered without a fact-intensive inquiry, common questions predominate over individual ones.

<u>Superiority</u>

Rule 23(b)(3)'s superiority requirement requires the plaintiffs to prove that a "class

action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The superiority analysis assesses the advantages and disadvantages of using the class-action device in relation to other methods of litigation. The Rule itself suggests various factors to consider in making this assessment: the interest of class members in individually controlling the litigation, the state of ongoing litigation brought by class members, the desirability of concentrating the litigation in the particular forum, and likely management difficulties. *Id.*

### Material advancement of the litigation

Litigating the proposed common issues will materially advance the litigation because it will require examination of the same witnesses and the production of generic documents that affect each class member. The cost of defending the action as well as the cost of prosecuting the claims will be substantially reduced by litigating common issues in one proceeding and in one forum.

### Class members' interest in individually controlling their lawsuit

Whether putative class members have a significant interest in individually prosecuting their own separate lawsuits is affected by the financial stakes involved in each individual's case. The greater the damages in one's claim vis-á-vis others' claims, the greater the interest the individual has in controlling the litigation. The lesser the potential damages, the less the interest is because separate suits may be impracticable. *See* Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note; *Blain v. SmithKline Beecham Corp.*, 240 F.R.D. 179, 192 (E.D. Pa. 2007).

There are few differences between each class member's case with respect to both liability and damages, and the potential value of each member's case falls within a defined

limited range.   Class members do not have a strong interest in controlling their own litigation.   Here, separate actions would be impractical and expensive to litigate. Individuals would have little incentive to direct the litigation.   Their individual interests are minimal compared to the overall extent of the issues in the litigation.

### Extent of existing litigation

There is no existing litigation that would overlap with the claims at issue in this case. The *Bristow* case is a putative class action filed on behalf of only California residents, and the class definition in the instant case excludes California residents.   There is one other putative class action that has been filed by a member of the proposed *Powers* class in state court in Illinois, *Way Point Aviation Serv. v. AVCO Corp.*, 2006-CH-22950 (Cook Cty. Circuit Court, Ill.)  The case was filed three months after the initial *Powers* complaint was filed.   In that state court case, the plaintiff recently filed an amended complaint.   Here, in contrast, substantial discovery has been completed.

### Manageability of proposed class and choice-of-law impediments

In examining the manageability of the proposed class, two factors are considered: the manageability of the class for trial,[35] and whether there are choice-of-law conflicts in a putative nationwide class.   *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 562 (E.D. Ark. 2005).  Given the resolution of the conflicts among the laws of the various jurisdictions, there is no manageability issue.   Thus, choice-of-law concerns do not present an impediment.

Because the predominance and superiority requirements of Rule 23(b)(3) are

---

[35] The 2003 Comment to Rule 23 states that an "increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof."  Plaintiffs have not submitted a trial plan.

satisfied, it is appropriate to certify it as a class action.

## Conclusion

The action satisfies the numerosity, commonality, typicality and adequacy requirements of Fed. R. Civ. P. 23(a), and the predominance and superiority requirements of Rule 23(b)(3).  Therefore, the motion for class certification will be granted.