**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES POWERS, on his own** | : | **CIVIL ACTION** |
| **behalf and on behalf of the** | : | |
| **class defined herein** | : | **NO. 06-2993** |
| | : | |
| **v.** | : | |
| | : | |
| **LYCOMING ENGINES, a Division of** | : | |
| **AVCO CORPORATION; AVCO** | : | |
| **CORPORATION; and TEXTRON, INC.** | : | |

| | | |
|---|---|---|
| **PLANE TIME, LLC, on its own behalf and** | : | **CIVIL ACTION** |
| **on behalf of others similarly situated** | : | |
| | : | **NO. 06-4228** |
| **v.** | : | |
| | : | |
| **LYCOMING ENGINES, a Division of** | : | |
| **AVCO CORPORATION; AVCO** | : | |
| **CORPORATION; and TEXTRON, INC.** | : | |

### <u>MEMORANDUM OPINION</u>

**Savage, J.**                                                         **February 9, 2011**

In these two consolidated putative nationwide class actions, we conduct a choice-of-law analysis and then re-evaluation of whether the plaintiffs have satisfied Rule 23's requirements for class certification.

Moving for class certification under Fed. R. Civ. P. 23(b)(3), the plaintiffs seek to represent a class of owners or previous owners of aircraft equipped with engines designed and built by Lycoming Engines.[1] They claim that the engines were manufactured with defective crankshafts that can cause a total loss of engine power and in-flight engine

---

[1] The plaintiffs named three defendants, Lycoming Engines, Avco Corporation ("Avco") and Textron, Inc. Since the motion for certification was filed, Textron has been dismissed. The two remaining defendants are referred to collectively as "Lycoming."

failures, and that Lycoming knew of and concealed the defect that prevents the crankshafts from functioning as intended. They seek damages for the cost to replace the defective crankshafts, which includes parts, labor, transportation, storage, insurance, the loss of the use of the aircraft while the crankshafts are being replaced and the diminished value of the aircraft.

Lycoming contends that the case is inappropriate for class certification because the facts as to both liability and damages are not common to all members of the putative class, the claims and defenses of the named plaintiffs are not typical of the class, individual issues will predominate over the common issues, and a class action would be unmanageable. It argues that whether a given engine or crankshaft is defective, whether the planes containing the subject crankshafts were purchased used or new, and when each plaintiff had or has the crankshaft replaced are questions peculiar to each individual plaintiff and not amenable to class certification.

The plaintiffs argue that Pennsylvania law should apply to their claims because even if there is a true conflict with other states, Pennsylvania has significant contacts with the contract for the sale of the aircraft and has a materially greater interest in having its law applied. Lycoming, on the other hand, contends that Pennsylvania law cannot be applied because Pennsylvania does not have significant contacts with the contract of the sale for each aircraft.

We shall apply the law of the state of purchase because that state has the most significant contacts with the contract issue and has a greater interest in having its law enforced. In addition, applying Pennsylvania law under these circumstances would violate the Due Process Clause and the Full Faith and Credit Clause. We also conclude that the

plaintiffs have not satisfied the predominance and superiority requirements of Rule 23(b)(3).  Therefore, the motion for nationwide class certification will be denied.

## Factual Background

Lycoming,[2] which is located in Williamsport, Pennsylvania, is a piston engine supplier for general aviation aircraft.  It sells its engines worldwide to new aircraft manufacturers, such as Cessna and Piper, as well as to airframe manufacturers, aircraft brokers and individuals in need of a new or replacement engine.  It sells its engines through 113 distributors, four of which are located in Pennsylvania, and the rest of which are worldwide.  It also overhauls engines at its facility in Pennsylvania.[3]

On February 21 and April 11, 2006, Lycoming issued two Mandatory Service Bulletins ("MSB"), 569 and 569A, requiring owners of the subject engines to retire and replace more than 4000 potentially defective crankshafts[4] that were manufactured between 1997 and 2002.  The MSBs set a replacement deadline of the earliest of: February 21, 2009; the next time the engine crankcase is separated to allow inspection or replacement of parts; or at the next maintenance overhaul.[5]

On May 25, 2006, the Federal Aviation Administration ("FAA") issued a proposed

---

[2] According to its website, Lycoming Engines is a global operating division of Textron's Avco Corporation subsidiary, and an operating unit of Textron Systems, specializing in the engineering, manufacturing, assembly, test and support of piston aircraft engines.  *See* http://www.lycoming.com/company/our-history.html.

[3] Defs.' Mot. to Dismiss (Document No. 12) at 2-3, 16; Def.'s Mem. of Law (Doc. No. 147) at 149-50.

[4] A crankshaft transfers power from the pistons to the propeller.  It is shaped through a process of heating blocks of steel, which are then forged with large hammers or presses.  Lycoming contends that the defects resulted from the forging supplier overheating some crankshafts.  Defs.' Mot. to Dismiss (Doc. No. 12) at 2-3.

[5] During an overhaul, the crankshaft is separated from the engine.

Airworthiness Directive ("AD") mandating replacement of the same crankshafts addressed in the MSB. The FAA concluded that an "unsafe condition exists" because the "same metallurgical flaw that was found in 23 confirmed crankshaft failures in different groups of Lycoming 360 and 540 engines [which were covered in earlier MSB's issued in 2002 and 2005] has been found in the crankshafts of this group of engines."[6] The AD warned that if the crankshafts are not replaced, they will "result in total engine power loss, in-flight engine failure, and possible loss of the aircraft." The AD set a crankshaft replacement deadline of the earliest of the next separation of the engine crankcase, the next engine overhaul, or twelve years from the date the crankshaft first entered service or was last overhauled.

Plaintiffs claim that Lycoming had known for years that its crankshafts were unsafe and likely to fail. Based on several field reports of broken crankshafts Lycoming had received in 2002, it issued MSBs, which were followed by FAA action that grounded hundreds of aircrafts with faulty crankshafts. At that time, Lycoming purportedly paid $35 million to remove, ship and replace the defective crankshafts. In 2005, Lycoming issued two more MSBs and replaced the crankshafts covered by those MSBs at its expense.

Lycoming will replace the crankshafts subject to the most recent MSBs and the AD issued in 2006 for free if the owners have the engines overhauled at a Lycoming facility in Pennsylvania, or pay $14,000 of a $16,000 price for a "crankshaft and parts" kit for owners who replace the crankshafts elsewhere. It refuses to pay costs for labor, shipping, alternative transportation, loss of use or other incidental costs regardless of where and by

---

[6] AD 2006-20-09, 21 Fed Reg. 57407, at 57408, attached as Ex. D to Defs.' Reply and Suppl. in Further Support of Mot. to Dismiss (Doc. No. 15).

4

whom the replacement is done.

A plaintiff class was certified, pursuant to Fed. R. Civ. P. 23(b)(3), consisting of:

> All persons or entities who reside in the District of Columbia or any state, except California, who, before April 11, 2006 purchased an aircraft subject to Lycoming Mandatory Service Bulletin 569A and either: (a) currently own that aircraft; or (b) sold that aircraft on or after April 11, 2006. The Class shall be divided into two subclasses consisting of: (a) those who currently own the subject aircraft and (b) those who sold the aircraft on or after April 11, 2006.

Plaintiffs Charles Powers, Cynthia Powers and Plane Time, LLC were certified as class representatives.

The information available about the named and putative plaintiffs and their aircraft follows. Charles and Cynthia Powers are Maryland citizens. They own an aircraft in which an authorized Lycoming service center in Maryland installed, as part of an annual inspection on April 30, 2002, a Lycoming factory-overhauled engine that contains a qualifying crankshaft.[7] When they bought the engine, it had logged 2,632 hours. Plane Time is a Delaware limited liability company whose only member, John Car, is a South Carolina citizen. In 2004, it purchased an aircraft that was manufactured in 2002 and contained a qualifying crankshaft inside a new, zero-time Lycoming engine. At the time of Plane Time's purchase, the aircraft still contained the original Lycoming engine with qualifying crankshaft, which was then two years old.[8]

Although little is known about them, putative plaintiffs comprise citizens of all states, except California, and the District of Columbia, who own or owned aircraft with a qualifying

---

[7] A "qualifying crankshaft" refers to aircraft subject to Lycoming Mandatory Service Bulletin 569A.

[8] Defs.' Supp. Mem. in Opp'n to Pls.' Mot. for Class Cert. (Doc. No. 74) at 7, 13-14 and exs. O and T; Defs.' Mem. in Opp'n to Pls.' Mot. for Class Cert. (Doc. No. 32) at 4.

crankshaft. The group includes those, like the Powerses, who purchased a Lycoming engine from one of Lycoming's distributors, as well as others, like Plane Time, who acquired the qualifying crankshaft by purchasing a new or used aircraft that was already equipped with a Lycoming engine. At the time of purchase of the aircraft or just the engine, the engine was either factory new, factory-overhauled, zero-time rebuilt or used. The purchases were made in all 50 states and the District of Columbia, and possibly outside of the U.S. Some use their aircraft for business purposes, others for personal purposes, and some for both.

## Procedural History

The plaintiffs filed separate initial complaints, seeking to represent themselves and a class of other purchasers of an aircraft containing an engine with a crankshaft subject to MSBs 569 and 569A. In his original complaint, Charles Powers brought claims for negligence, unjust enrichment, and violations of state unfair trade practices statutes, including Pennsylvania's Unfair Trade Practices and Consumer Protection Law. In the other action, the plaintiff asserted causes of action for negligence and unjust enrichment. In their amended consolidated complaint, the plaintiffs added claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose, and dropped the negligence claim. Before initially moving for class certification, they withdrew the unfair trade practices and the breach of implied warranty of fitness for a specific purpose claims, leaving just the unjust enrichment and breach of implied warranty claims.

Plaintiffs' motion for class certification was granted. Lycoming appealed the class certification order. The Third Circuit Court of Appeals vacated the order certifying the class

and remanded the case "for an entirely new choice-of-law determination for both the unjust enrichment and breach of implied warranty claims." *Powers v. Lycoming Engines, Inc.*, 328 F.App'x 121, 128 (3d Cir. 2009). Once that analysis is done, we must decide whether the plaintiffs have satisfied the Rule 23 requirements for class certification. *Id.*

The parties were ordered to brief the choice-of-law issues raised in the Third Circuit's opinion. The plaintiffs have since voluntarily dismissed their unjust enrichment claim.[9] Therefore, the only remaining claim subject to the choice-of-law analysis is the breach of implied warranty of merchantability claim.

## Conflict of Laws

As the Third Circuit pointed out, irreconcilable conflicts can be an impediment to certification. *Id.* at 124. Because those conflicts affect the analysis of the typicality and adequacy requirements of Rule 23(a), and the manageability factor of the Rule 23(b)(3)(D) superiority test, the conflicts issues must be resolved before the class certification requirements are analyzed.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 621 (3d Cir. 2009) (citing *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006)). Accordingly, Pennsylvania choice of law rules apply here.

Pennsylvania uses a two-step process to resolve choice-of-law questions. We must first determine whether there is a real conflict. Mere differences in the states' laws do not necessarily constitute actual conflicts. *Berg Chilling*, 435 F.3d at 462. There is no conflict

---

[9] *See* Pls.' Mem. in Supp. of Re-Certification of the Implied Warranty of Merchantability Claim (Doc. No. 146) at 18 n. 5; Pls.' Notice of Withdrawal (Doc. No. 150).

where the application of either state's law produces the same result. *Id.* Only where a state's governmental interests are frustrated by application of another state's law is there an actual conflict. *Hammersmith v. TIG Ins.* Co., 480 F.3d 220, 229-30 (3d Cir. 2007) (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991)).

If there is a real conflict, we proceed to the second step and decide which state has the greater interest in the application of its law. *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996) (citing *Cipolla v. Shaposka*, 267 A.2d 854, 855 (Pa. 1970)). This "flexible inquiry" first considers each state's contacts with the issue under the Restatement (Second) of Conflict of Laws and then qualitatively weighs those contacts vis-a-vis the relevant states' policies and interests. *Specialty Surfaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223, 229-30 (3d Cir. 2010); *Hammersmith*, 480 F.3d at 227 (citing *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805-06 (Pa. 1964)). To determine which state has the greater contacts with the issue, we apply the appropriate Restatement section identifying the relevant contacts for the type of action at issue. *Berg Chilling*, 435 F.3d at 463, 467. After balancing the respective governmental policy interests of the affected states, we apply the law of the state having the greater interest in the determination of the issue. *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005).

*Conflict*

All states, except Louisiana, have adopted § 2-314 of the Uniform Commercial Code ("U.C.C."), which provides that unless excluded or modified, a warranty that the goods are merchantable is implied in a contract for sale.[10] U.C.C. § 2-314 (2003). There are,

---

[10] Louisiana's implied warranty law provides for relief when a defect renders a product useless or diminishes its usefulness or value. *See* La. Civ. Code Ann. art. 2520.

nevertheless, significant differences among the states regarding the application of implied warranty of merchantability law. The most significant is the privity requirement.[11] Thirty-one states, including Pennsylvania, and the District of Columbia, do not require privity of contract to recover for breach of the implied warranty of merchantability where only economic damages are involved.[12] Eighteen states require privity between the parties in cases involving purely economic loss.[13] Thus, we must analyze whether this conflict between the laws of the privity states and Pennsylvania is true or false.

*True or False Conflict*

The question is whether the competing states' governmental interests are frustrated by application of the other states' laws. Pennsylvania's policy reason is representative of the laws of the other non-privity states. In abolishing the vertical privity requirement in all implied warranty actions, the Pennsylvania Supreme Court determined that continuing such a requirement would "perpetuat[e] a needless chain of actions whereby each buyer must seek redress from his own immediate seller [up the chain] until the actual manufacturer is eventually reached. . ." *Kassab v. Central Soya*, 246 A.2d 848, 856 (Pa. 1968), *rev'd on other grounds by AM/PM Franchise Ass'n v. Atlantic Richfield Co.*, 584

---

[11] In addition to privity, there are differences among the states regarding the application of implied warranty of merchantability law with respect to disclaimer requirements, limitation of liability and available defenses. We address these differences in the later section discussing manageability of this case as a class action.

[12] These states are: Alaska, Arkansas, Colorado, Delaware, the District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, West Virginia and Wyoming.

[13] The privity states are: Alabama, Arizona, Connecticut, Florida, Georgia, Idaho, Illinois, Iowa, Kentucky, New York, North Carolina, Ohio, Oregon, Tennessee, Vermont, Virginia, Washington and Wisconsin. Virginia requires privity when a plaintiff seeks consequential damages. Here, the plaintiffs seek both direct and consequential damages. Therefore, privity is required under Virginia law.

A.2d 915 (Pa. 1990). It observed that the privity requirement ignores the commercial reality that the typical purchaser buys from a retail merchant who is usually no more than an "economic conduit" between the purchaser and the manufacturer of the defective product. *Id*. at 853. In abolishing the horizontal privity requirement, the Pennsylvania Supreme Court "decided that no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect." *Salvador v. Atlantic Steel Boiler Co.*, 319 A.2d 903, 907 (Pa. 1974).

In the eighteen states that maintain a privity requirement in implied warranty claims involving solely economic loss, the purpose of the requirement is to protect "remote manufacturers." For example, in most of those states,[14] the express policy is to allow the contracting parties to determine the scope of each party's obligations and liabilities, using traditional contract principles where there is no personal injury or damage to other property.[15] Illinois and Connecticut's policy reason for the privity requirement is to limit the damages for remote manufacturers and provide foreseeability as to potential claimants.[16]

---

[14] Alabama, Florida, Georgia, Idaho, Kentucky, New York, North Carolina, Oregon, Tennessee, Vermont, Virginia and Wisconsin.

[15] Cases stating policy reasons: *Birmingham Chero-Cola Bottling Co. v. Clark*, 89 So. 64 (Ala. 1921); *Barre v. Gulf Shores Turf Supply, Inc.*, 547 So.2d 503 (Ala. 1989); *Mesa v. BMW of North America, LLC*, 904 So.2d 450 (Fla. Dist. Ct. App. 2005); *Ellis v. Rich's, Inc.*, 212 S.E.2d 373 (Ga. 1975); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 544 P.2d 306 (Idaho 1975); *Berger v. Standard Oil Co.*, 103 S.W. 245 (Ky. 1907); *Hole v. General Motors Corp.*, 442 N.Y.S.2d 638 (N.Y. App. Div. 1981); *Terry v. Double Cola Bottling Co.*, 138 S.E.2d 753 (N.C. 1964); *Dravo Equip. Co. v. German*, 698 P.2d 63 (Or. Ct. App. 1985); *Messer Griesheim Indust., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457 (Tenn. Ct. App. 2003); *Vermont Plastics, Inc. v. Brine, Inc.*, 824 F. Supp. 444 (D. Vt. 1993); *Stoney v. Franklin*, 54 Va. Cir. 591 (2001); and *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 592 N.W.2d 201 (Wis. 1999).

[16] *United Technologies Corp. v. Saren Engineering, Inc.*, No. X06CV-020173135S, 2002 WL 31319598 (Conn. Super. Ct. Sept. 25, 2002); and *Rotche v. Buick Motor Co.*, 193 N.E. 529 (Ill. 1934).

Ohio and Washington's purpose is to defer to the contracting parties' agreement limiting responsibility and to provide remote manufacturers foreseeability as to potential claimants.[17] Arizona maintains the privity requirement because litigation between a direct buyer and seller is simpler and less costly.[18] Iowa's goal is to preserve a manufacturer's right to disclaim a warranty because it would be difficult for a manufacturer to issue disclaimers to purchasers with whom it had no contact.[19]

In light of these competing policy reasons, there is a real conflict between the application of Pennsylvania law and the laws of the eighteen states that require privity. Allowing the plaintiffs to sue a manufacturer with whom they did not deal directly will frustrate the interests of those states that require privity. On the other hand, insulating Lycoming from suit will frustrate Pennsylvania's interest in holding responsible a manufacturer which has placed a defective product in the stream of commerce regardless of how far upstream it is. Therefore, there is a real conflict, requiring an analysis of which state has the most significant relationship to the contract and the greater interest in the application of its law.[20]

---

[17] *Curl v. Volkswagen of America, Inc.*, 871 N.E.2d 1141 (Ohio 2007); and *Tex Enterprises, Inc. v. Brockway Standard, Inc.*, 66 P.3d 625 (Wash. 2003) (en banc).

[18] *Flory v. Silvercrest Indust., Inc.*, 633 P.2d 383 (Ariz. 1981).

[19] *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103 (Iowa 1995).

[20] Creating two subclasses consisting of privity states and non-privity states will not avoid the conflict of laws. Privity is not the only conflict. There are irreconcilable differences among the states with respect to disclaimer requirements, limitation of liability and available defenses. The survey of the states' different laws set out in the later section discussing manageability problems and choice-of-law impediments in the superiority analysis demonstrates the multitudinous differences.

*Most Significant Relationship*

The law of the state having the most significant relationship with the transaction and the parties applies. Restatement (Second) of Conflict of Laws § 188 (1971). The following factors are considered in the significant relationship analysis: (1) where the contract was made; (2) where it was negotiated; (3) where it was performed; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id*. These contacts must be evaluated qualitatively with respect to their relative importance to the particular issue. *Specialty Surfaces Int'l, Inc. v. Continental Casualty Co.*, 609 F.3d at 230 (quoting *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir. 1987)).

With respect to the first factor, the place of contracting, the comments to § 188 instruct that "[s]tanding alone, the place of contracting is a relatively insignificant contact." Restatement (Second) of Conflict of Laws § 188 cmt. e (1971). Usually, the place of contracting tends to be linked to other contacts. *Id*. It is the place where "the last act necessary, under the forum's rules of offer and acceptance," created a binding and enforceable agreement. *Id*. Under Pennsylvania law, "a contract is created where there is mutual assent to the terms . . . ." *Hartman v. Baker*, 766 A.2d 347, 351 (Pa. Super. Ct. 2000) (quoting *Shovel Transfer and Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999)).

Here, the place of contracting was the state where each aircraft or engine was purchased because that is where the purchaser accepted the seller's offer to sell the plane, or Lycoming's offer to sell the engine, forming the contract. The qualifying engines were sold throughout the world either through one of Lycoming's 113 distributors, from a seller

not affiliated with Lycoming, or as part of an aircraft (not sold by Lycoming). Therefore, the place of contracting, the state of purchase, varies depending on where each owner bought the plane or engine.

The second factor, the place where the contract was negotiated, carries little weight "when there is no single place of negotiation," such as when the parties' negotiations occur in different states through mail, telephone or over the internet. Restatement (Second) of Conflict of Laws § 188 cmt. e (1971). The place of negotiation is not relevant when the parties did not negotiate the warranties. *Hull v. Fleetwood Enters., Inc.*, Civ. Action No. 06-1669, 2007 WL 917088, at *4 (W.D. Pa. March 21, 2007).

Here, there were no negotiations between Lycoming and the buyers. Most sales of Lycoming engines were through distributors and Lycoming did not deal directly with the buyers. Additionally, Lycoming was not involved directly in the sale of any aircraft. Consequently, the contract in the case of each buyer was where each purchased the plane or engine. Therefore, the place of negotiation is the state where the plane or engine was purchased because that is where the contract and the warranties were created and negotiated.

The third factor, the place of performance, is accorded little weight when performance "is to be divided more or less equally among two or more states with different local law rules on the particular issue." Restatement (Second) of Conflict of Laws § 188 cmt. e (1971). In determining which state is the place of performance, local law governs. *Id*.

In this case, performance occurred in the state where each buyer took delivery of the plane or engine and paid for it. Although where shipment of the engine originated is

important because Lycoming performed there, it is not controlling. Where the plane or engine was delivered is more important because that is the state where the contract was completed. Until the planes or engines were accepted and payment made, the buyers had not performed, unless the sales contract provided otherwise.[21] Therefore, the place of performance is the state where each buyer purchased the plane or engine because that is the state where both parties fulfilled the terms of the contract.

If the place of negotiation and performance are the same, that state's law will normally be the more significant. Restatement (Second) of Conflict of Laws § 188(3) and cmt. f (1971). Performance and negotiation took place where each buyer purchased the plane or engine. Thus, according to comment e of § 188, the state where each buyer purchased the plane or engine has the more significant relationship to the issue in this case.

The location of the subject matter of the contract, the fourth factor, has little, if any, significance in this case. A plane is mobile, as is the engine inside it. It is not a stationary object, such as land or a building. The comments to § 188 dictate that if the contract involves a "physical thing, such as land or a chattel, . . . the location of the thing . . . is significant." Restatement (Second) of Conflict of Laws § 188 cmt. e (1971). In breach of implied warranty actions involving helicopters, the location of the subject matter of the contract has been determined to be the location of the subject matter on the day of delivery. *Crouch v. General Elec. Co.*, 699 F. Supp. 585, 592-93 (S.D. Miss. 1988) and *Price v. Int'l Telephone and Telegraph Corp.*, 651 F. Supp. 706, 711 (S.D. Miss. 1986).

---

[21] The only contract produced in this case is one between plaintiff Plane Time LLC and a former owner of the aircraft. This contract reveals nothing about Lycoming, which was not a party to the contract.

In this case, the location of the subject matter is the state in which each plane was sold and delivered.[22] Although the comments suggest that we should accord this factor significant weight, we decline to do so because planes are similar to an automobile and easily moveable.[23] In any event, these sales transactions were completed throughout the United States.

The last factor is the relationship of the parties to each of the states. Lycoming Engines is located in Pennsylvania. It is a division of AVCO, a Delaware corporation with its principal place of business in Rhode Island. The crankshafts were built in Texas. The plaintiffs are scattered throughout forty-nine states. Only a fraction reside in Pennsylvania.

Where the crankshafts were forged, Texas, is not significant. The crankshafts were components of the engines, which were manufactured in Pennsylvania. The Texas company that forged the crankshafts is not a party to this litigation.

Weighing the contacts on a qualitative scale, we conclude that each putative class member's state of purchase has the most significant relationship with each contract. Pennsylvania's only contacts are that Lycoming is located there, a few Lycoming distributors are in Pennsylvania and a few class members may be domiciled there. Where each buyer purchased and took delivery of the plane or engine has the most significant relationship with the contract because it is the place of contracting. It is where the negotiations occurred and the contract was performed. Because each state where the

---

[22] *See Curl v. Greenlee Textron, Inc.*, 404 F. Supp. 2d 1001, 1014 (S.D. Ohio 2005) (citing *Power-Tek Solutions Serv., LLC v. Techlink, Inc.*, 403 F.3d 353, 358 (6th Cir. 2005)) (finding that location in § 188 refers to the physical location).

[23] *California Cas. & Fire Ins. Co. v. Brinkman*, 50 F. Supp. 2d 1157, 1166 n.5 (D. Wy. 1999) states that the fourth factor was given less weight in the automobile context because automobiles are easily moveable.

plane or engine was purchased[24] has the most significant relationship with each contract, forty-nine different states and the District of Columbia are affected. Therefore, we must perform a qualitative balancing of the interests and policies of each jurisdiction. *Hammersmith*, 480 F.3d at 235 (quoting *Melville v. American Home Assur. Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978)).

*Government Interest Analysis*

Pennsylvania has an interest in holding in-state manufacturers liable for defective products produced and placed into the stream of commerce in Pennsylvania. However, each state where the contract was made and each plane or engine sold has an interest in enforcing its laws that affect business conducted within its borders and its residents. In this case, that interest is superior to Pennsylvania's.

"[E]very state has an interest in having its law applied to its resident claimants . . ." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). The class member's state of residence will have a strong interest in applying its law to protect its residents, regardless of the state of design or manufacture. *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig*, 288 F.3d 1012, 1017-18 (7th Cir. 2002). S*ee also* 1 Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 5:46 (6th ed. 2009) ("It is not sufficient to argue that a single state has the greatest interest in having its law applied because the defendant is headquartered there, the product in question was manufactured there, and similar connections.") (citing *In re Ford*

---

[24] The state of purchase and the state of residence in many cases will be the same where the buyer purchased the aircraft or engine in the state where the buyer resides. In that case, the domicile of the parties favors applying the state of purchase.

*Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D. N.J. 1997)).

Balancing the competing interests, we conclude that the state of purchase has the more significant relationship to the contract and the greater interest in having its law of implied warranty of merchantability applied.

### Due Process, and Full Faith and Credit

Pennsylvania must have "'a significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class . . . in order to ensure that the choice of [Pennsylvania] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (quoting *Allstate Ins. Co. v. Hague*, 499 U.S. 302, 312-313 (1981) (plurality opinion)). *See Powers*, 328 F.App'x at 125. Otherwise, application of Pennsylvania law would offend the Due Process, and the Full Faith and Credit Clauses of the Constitution.

Class members have a due process right to have their claims decided by application of their own states' laws. To apply the law of a state having little or no connection to the claims would be arbitrary and unfair.

Here, Pennsylvania does not have the "significant aggregation of contacts" to the implied warranty of merchantability claim asserted by each class member that will ensure that the application of its law will not be "arbitrary or unfair." Very few of the class members have any connection with Pennsylvania. In those instances where the contract was made and the plane or engine was sold elsewhere, the only connection to Pennsylvania is that it is the state of manufacture of the engine containing the qualifying crankshaft and where Lycoming is located. Under these circumstances, applying Pennsylvania law to each class member's implied warranty of merchantability claim would violate the Due Process Clause

and the Full Faith and Credit Clause.

## Legal Standards for Class Certification

To be certified, a class must satisfy all four requirements of Rule 23(a) and must fit one of the provisions of Rule 23(b). The plaintiffs must demonstrate that: (1) the size of the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses are typical of the class; and (4) the representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). Additionally, the proposed class action must be one of the types recognized by Rule 23(b). *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 147 (3d Cir. 2008). Here, plaintiffs have moved for certification only under subsection (b)(3), which requires a finding that common questions of law or fact predominate over questions affecting only individual class members, and that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Because the plaintiffs moving for class certification must satisfy the requirements of both Rule 23(a) and (b), the failure to meet either part will result in the denial of class certification. The analysis can start with either part. Thus, we begin with an evaluation of the predominance and superiority requirements.

The plaintiffs have moved for certification under subsection (b)(3), which requires that common questions of law or fact predominate over questions affecting only individual class members, and that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Thus, the plaintiffs must satisfy both the predominance and the superiority aspects of Rule 23(b)(3).

In determining whether the action fits within Rule 23(b)(3), we consider the interest of class members in individually controlling the litigation, the status of ongoing litigation brought by members of the class, the desirability of concentrating the litigation in the particular forum, and likely management difficulties. Fed. R. Civ. P. 23(b)(3)(A)-(D). In the end, it is the interests of the individual members in controlling their own litigation that drives the certification decision on predominance. The superiority analysis focuses on the advantages and disadvantages of using the class-action device in relation to other litigation methods.

*Predominance*

In a class action brought under Rule 23(b)(3), common questions of law or fact must predominate over questions affecting only individual members and must be a significant part of the individual cases. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," a standard "far more demanding" than the commonality requirement of Rule 23(a). *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). Thus, we must predict how specific issues will play out at trial in order to determine whether common or individual issues predominate in a given case. *In re Hydrogen Peroxide*, 522 F.3d at 311 (citations omitted).

Class certification is not appropriate if proof of the essential elements of the cause of action requires individual treatment. *Id*. (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)). Additionally, subdivision 23(b)(3)

> encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without

> sacrificing procedural fairness or bringing about other undesirable results . . . .

> It is only wh[en] predominance exists that economies can be achieved by means of the class-action device.

Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note.

The plaintiffs share with the putative class members the fact that they are owners of aircraft equipped with the engines at issue. They do not share how they became owners, that is, whether they purchased the planes or just the engines from a distributor or a prior owner, or new or used.

These differences are not meaningless. They take on significance in applying each state's law. The class members who purchased their planes or engines in states that require privity must establish privity with Lycoming. This inquiry is peculiar to the class member.

Dividing the plaintiffs into two subclasses, one for plaintiffs from privity states and another for those from non-privity states, does not solve the problem. There are various differences among the states' laws affecting entitlement to disclaim the warranty, the extent of the warranty, limitation of liability defenses and damages. Thus, the need for individual inquiry will remain.

For example, class members who purchased the aircraft or engines in states requiring notice of breach as a prerequisite to suit must establish that they provided notice to Lycoming. Even though most states require notice, what suffices as notice is not the same among the states. For instance, those who purchased their planes in Alaska and Arizona will satisfy the notice requirement by the filing of the complaint. Those who purchased their planes in Alabama, Arkansas and Illinois must establish notice by

informing the manufacturer of the defect by writing a letter or calling its place of business or corporate headquarters because later filing a complaint will not suffice.

There are multiple defenses, such as assumption of the risk, hindrance of the contract, misuse of the product, and the validity of the warnings, that exist in some states and not others. In some cases, these defenses will be available to Lycoming. In others, they will not. Because not all the states recognize the same defenses, determining whether the defense applies to a particular class member and whether the defense bars the class member's action is necessarily individualized.

Even though we know little about the individual named plaintiffs, we can be certain that there are factual circumstances and legal differences among them and the putative class members that preclude a finding of predominance. The plaintiffs in these cases share the same law with some class members who purchased their planes or engines in states with similar merchantability laws, but do not share the law with those class members who bought their planes or engines in states that have conflicting laws.

In short, there are a multitude of legal standards that must be applied to each class member. Factual differences are innumerable. Where each putative class member resides is not known. Where they purchased the aircraft or engine is not known. Thus, without engaging in an individual fact-finding inquiry, we cannot determine which state's law applies to each putative class member.

Given the multitude of differences in the legal standards applicable to each class member's claim, determining liability at trial would require an individualized factual inquiry. The fact finder would have to determine where each class member purchased the aircraft or engine and then apply that state's law, which in turn requires sifting through differing

definitions of merchantability, limitations of liability, and various defenses. These many differences among the class members overwhelm the common legal issues. In other words, the common issues do not predominate.

*Superiority*

Not only do the plaintiffs fail to satisfy the predominance prerequisite, they cannot establish that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The superiority analysis assesses the advantages and disadvantages of using the class-action device in relation to other methods of litigation. *Danvers*, 543 F.3d at 149. The rule itself suggests various factors to consider in making this assessment: the interest of class members individually controlling the litigation; the state of ongoing litigation brought by class members; the desirability of concentrating the litigation in the particular forum; and likely management difficulties. *Id.*[25] It requires a rigorous analysis as to how potential relief to individual class members would be managed, "specifying, for example, the methodology by which calculations and awards of relief would be made with respect to individual class members." *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 202 (3d Cir. 2009).

Class members' interest in individually controlling their lawsuit

Whether putative class members have a significant interest in individually prosecuting their own separate lawsuits is affected by the financial stake involved in each

---

[25] Although the plain language of Rule 23(b)(3) directs the court to consider these factors in evaluating *both* predominance and superiority, in a majority of cases, courts consider these factors solely with respect to making a determination of superiority. *Moore's Federal Practice*, §§ 23.44[1], 23.46[2][a] (3d ed. 2006).

individual's case.  The greater the damages in one's claim vis-á-vis others' claims, the greater the interest the individual has in controlling the litigation.  The lesser the potential damages, the interest is less because separate suits may be impracticable.  *See* Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note; *Blain v. SmithKline Beecham Corp.*, 240 F.R.D. 179, 192 (E.D. Pa. 2007).

Class members do not have a strong interest in controlling their own litigation because the damages recoverable and the remedy sought are not substantial.  Individuals would have little incentive to direct the litigation.  On the other hand, separate actions would be impractical and expensive to litigate.  Thus, it is unlikely that any plane owner would seek to bring his own action.

Extent of existing litigation

There is no existing litigation that overlaps with the claims at issue in this case.  The *Bristow* case is a putative class action filed on behalf of only California residents.[26]  These actions exclude California residents.  There was one other putative class action that was filed by a member of the proposed *Powers* class in Illinois state court.  *See Way Point Aviation Serv. v. AVCO Corp.*, 2006-CH-22950 (Cook Cty. Circuit Court, Ill.).[27]  Several other cases filed against the defendants for breach of implied warranty have distinct

---

[26] The California action was decertified because the evidence showed that damages will be individualized and counsel failed to set forth a formula to aggregate the damages.  *See Bristow v. Lycoming Engines*, No. Civ-S-06-1947 LKK/GGH, 2008 WL 1902738 (E.D. Cal. Apr. 25, 2008); *Bristow v. Lycoming Engines*, No. Civ-S-06-1947 LKK/GGH, 2008 WL 850306 (E.D. Cal. Mar. 25, 2008)

[27] All counts against AVCO and Textron were dismissed, but plaintiffs were granted leave to file an amended complaint against AVCO by June 29, 2007.  However, when performing a search under the Cook County docket for case no. 2006-CH-22950, no results appeared.

differences from this case.[28]  None of these other cases overlap this action.


## Appropriateness of forum

Because Lycoming is located in Pennsylvania and the class members are geographically dispersed, this forum appears appropriate in terms of judicial economy and uniformity.  *See In re S.E. Hotel Props. Ltd. P'Ship Investor Litig.*, 151 F.R.D. 597, 609; *Riordan v. Smith Barney*, 113 F.R.D. 60, 66 (N.D. Ill. 1986).  However, where the breach of the implied warranty occurred is the more appropriate forum because that state's law would apply.  *Goldwater v. Alston & Bird*, 116 F.R.D. 342, 356 (S.D. Ill. 1987).  Therefore, the state of purchase, not Pennsylvania, is the more appropriate forum.


## Manageability of proposed class and choice-of-law impediments

In examining the manageability of the proposed class, we consider the manageability of the class for trial,[29] and whether there are choice-of-law conflicts.  *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 562 (E.D. Ark. 2005).

A single nationwide class action is unmanageable when the law of many different jurisdictions must be applied.  *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1018.  Given

---

[28] *Johnson v. AVCO Corp.*, Case No. 07-1695 (E.D. Mo.) (Wrongful Death - Settled); *Luyster v. Textron, Inc.*, Case No. 06-4166 (S.D.N.Y.) (Wrongful Death - Still Pending); *AIG Aviation Ins. v. AVCO Corp.*, Case No. 09-352 (D.N.M.) (Turbo charger is at issue, but they allege that lack of merchantability is not limited to the turbo charger - Still Pending); *Yarbrough v. AVCO Corp.*, Case No. 06-0730 (M.D. Tenn.) (Breach of warranty of Precision carburetor - Remanded to state court); *Bishop v. New Piper Aircraft, Inc.*, Case No. 04-60393 (S.D. Fla.) (Defective T-540 engine - Settled); and *Duvall v. AVCO Corp.*, Case No. 05-1786 (M.D. Pa.) (Wrongful Death - Settled).

[29] The 2003 Comment to Rule 23 states that an "increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof."  *See* 2003 Advisory Committee Note.  Plaintiffs have not submitted a trial plan.

the difficult, if not, impossible burden of instructing the jury on the different laws of several

states, a nationwide class action can not pass the superiority test. *In re American Medical*

*Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996). Nevertheless, a nationwide class action can

still be certified when the differences between state laws are relatively minor, and those

differing state laws can be grouped accordingly to apply them as a unit. *In re Prudential*

*Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998).

There are over fifty different states' laws[30] that may apply to the implied warranty of

merchantability claims. However, we still must determine whether the differences between

the states' laws are minor and whether we can group the laws to apply them as a unit.

Defenses, depending on the state where the class member purchased the plane,

vary. Some states apply the privity rule,[31] and others do not.[32] Consequently, Lycoming

can assert a defense of lack of privity in some instances and not in others.

Disclaimers are enforceable in all states, except Mississippi.[33] The requirements

needed to disclaim the implied warranty of merchantability differ among the states. A

majority require that the disclaimer of the implied warranty of merchantability must use the

---

[30] Forty-nine states and the District of Columbia.

[31] These states are: Alabama, Arizona, Connecticut, Florida, Georgia, Idaho, Illinois, Iowa, Kentucky, New York, North Carolina, Ohio, Oregon, Tennessee, Vermont, Virginia, Washington and Wisconsin.

[32] These states are: Alaska, Arkansas, Colorado, Delaware, the District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, West Virginia and Wyoming.

[33] Mississippi does not allow parties to disclaim the implied warranty of merchantability. Miss. Code. Ann. § 11-7-18.

word "merchantability" and be conspicuous.[34]  North Dakota,[35] South Dakota[36] and Washington[37] allow disclaimers, but disfavor them unless they are set forth with particularity.  Other states require only that the writing be conspicuous.[38]  Arizona,[39] Kansas[40] and Montana[41] allow a seller to disclaim the implied warranty of merchantability provided it is not unconscionable.  Louisiana requires a disclaimer to appear in clear and unambiguous terms in the sales agreement and brought to the attention of or explained to the buyer.  *Andrus v. Cajun Insulation Co.*, 524 So.2d 1239, 1245 (La. Ct. App. 1988). Vermont disfavors[42] disclaimers and does not allow disclaimers of implied warranties for new or unused consumer[43] goods.  West Virginia allows implied warranties to be limited or excluded by agreement or deed,[44] but not in consumer transactions.[45]  Wyoming enforces disclaimers that specifically mention "merchantability" in a conspicuous writing

---

[34] These states are: Alaska, Colorado, Delaware, the District of Columbia, Florida, Georgia, Idaho, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah and Virginia.

[35] *Darby v. Swenson*, 767 N.W.2d 147, 151 (N.D. 2009).

[36] *Pearson v. Franklin Labs., Inc.*, 254 N.W.2d 133, 141-42 (S.D. 1977).

[37] *Baker v. City of Seattle*, 484 P.2d 405, 406-08 (Wash. 1971) (en banc).

[38] These states are: Alabama, Arkansas, Connecticut, Hawaii, Illinois and Wisconsin.

[39] *Pacific Am. Leasing Corp. v. S.P.E. Bldg. Sys.*, 730 P.2d 273, 279-80 (Ariz. Ct. App. 1986).

[40] *Schweizer v. DEKALB Swine Breeders, Inc.*, 954 F. Supp. 1495, 1504 (D. Kan. 1997).

[41] *Beneficial Commercial Corp. v. Cottrell*, 688 P.2d 1254, 1256-57 (Mont. 1984).

[42] *Lectro Mgmt, Inc. v. Freeman, Everett & Co., Inc.*, 373 A.2d 544, 546 (Vt. 1977).

[43] *Corey v. Furgat Tractor & Equip., Inc.*, 520 A.2d 600, 601 (Vt. 1986).

[44] *Mountaineer Contractors, Inc. v. Mountain State Mack, Inc.*, 268 S.E.2d 886, 889-90 (W. Va. 1980).

[45] *Wolfe v. Welton*, 558 S.E.2d 363, 375 (W. Va. 2001).

even if the buyer has not read or acknowledged the disclaimer, and where the buyer read or acknowledged an inconspicuous disclaimer prior to the purchase. *Stauffer Chemical Co. v. Curry*, 778 P.2d 1083, 1092 (Wyo. 1989). Thus, given this national array of implied warranty of merchantability laws, Lycoming may argue that it disclaimed the implied warranty of merchantability in some cases, but not in others.

Notice to the seller of the breach of the implied warranty of merchantability is required in every state, except Louisiana. Among these states requiring notice, there are differences in how the notice statutes are applied. Every state that requires notice has adopted § 2-607 of the U.C.C., which bars recovery where notice was not given within a reasonable time. The filing of the complaint by a consumer will suffice as notice to the seller in Alaska[46] and Arizona.[47] In other states, Alabama,[48] Arkansas[49] and Illinois,[50] it does not. In Kentucky, the seller has the burden of showing that the buyer's failure to provide notice was unreasonable and prejudicial. *Mullins v. Wyatt*, 887 S.W.2d 356, 358 (Ky. 1994). Yet, in Michigan, a finding of prejudice is not required to determine that notice was untimely. *Eaton Corp. v. Magnavox Co.*, 581 F. Supp. 1514, 1532, 1534 (E.D. Mich. 1984). In Connecticut, the notice requirement does not apply to third party beneficiaries. *Tomczuk v. Town of Chesire*, 217 A.2d 71, 73-74 (Conn. Super. Ct. 1965). Kansas does not require notice when the buyer is a consumer, but it is required when the buyer is a

---

[46] *Shooshanian v. Wagner*, 672 P.2d 455, 462-63 and n.6 (Alaska 1983).

[47] *Davidson v. Wee*, 379 P.2d 744, 749 (Ariz. 1963).

[48] *Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079, 1086 (Ala. 2003).

[49] *Adams v. Wacaster Oil Co., Inc.*, 98 S.W.3d 832, 835-36 (Ark. Ct. App. 2003).

[50] *Anthony v. Country Life Mfg., LLC.*, 70 F.App'x. 379, 384 (7th Cir. 2003).

merchant.  *Wichita v. U.S. Gypsum Co.*, 828 F. Supp. 851, 856-57 (D. Kan. 1993), *rev'd on other grounds*, 72 F.3d 1491 (10th Cir. 1996).  Maine[51] and Missouri[52] require notice only to the immediate seller.  These differences regarding notice requirements present defenses that Lycoming may assert in the cases of some class members and not in others.

Except for Mississippi and Louisiana, every state and the District of Columbia allow a seller to limit the remedies to repair or replacement, and limit or exclude consequential damages unless unconscionable.  Mississippi does not allow parties to limit remedies to which the buyer may be entitled for breach of an implied warranty of merchantability.[53] Louisiana allows a seller to limit damages suffered as a result of the breach of redhibitory defects,[54] but when a contract contemplates such a limitation, it "must clearly indicate the intentions of the parties."[55]  Although a majority of the states allow a seller to limit damages, there are still significant differences among those states.  Alabama, Idaho and North Dakota[56] require that a limitation of damages clause must be a part of the bargain.  Some

---

[51] *Sullivan v. Young Bros.*, 893 F. Supp. 1148, 1160 (D. Me. 1995), *rev'd on other grounds*, 91 F.3d 242 (1st Cir. 1996).

[52] *Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 361 (Mo. Ct. App. 1989).

[53] Miss. Code. Ann. § 75-2-719(4).

[54] La. Civ. Code Ann. art. 2520.  Article 2520 provides for relief when a defect renders a product useless or diminishes its usefulness or value.

[55] *Gulf American Indust. v. Airco Indus. Gases*, 573 So.2d 481, 489 (La. Ct. App. 1990); La. Civ. Code Ann. art. 2548 (providing that the "parties may agree to an exclusion or limitation of the warranty against redhibitory defects [as long as t]he terms of the exclusion or limitation [are] clear and unambiguous and . . . brought to the attention of the buyer.").

[56] *Terrell v. R & A Mfg. Partners, Ltd.*, 835 So.2d 216, 224 (Ala. Civ. App. 2002); *Duffin v. Idaho Crop Improvement Ass'n*, 895 P.2d 1195, 1205 (Idaho 1995); *Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 654 (N.D. 1989).

states, such as Nebraska,[57] New Jersey[58] and Wyoming[59] require that the limitation be conspicuous. Conspicuousness of the limitation of remedies clause is a factor in determining unconscionability in Illinois,[60] Massachusetts[61] and Pennsylvania.[62] Delaware allows a buyer to recover consequential damages only where the damages were reasonably foreseeable when the contract was made. *Falcon Tankers, Inc. v. Litton Sys., Inc.*, 355 A.2d 898, 907 (Del. Super. Ct. 1976). Thus, Lycoming may contend that it limited the buyer's remedies in some states, but not in other states.

Idaho,[63] Massachusetts,[64] Michigan,[65] New York,[66] Rhode Island,[67] Virginia[68] and Wisconsin[69] have denied recovery when a buyer misuses the product which causes the buyer's injury. While misuse of the product bars recovery in those states, misuse of the

---

[57] *Adams v. American Cyanamid Co.*, 498 N.W.2d 577, 588 (Neb. Ct. App. 1992).

[58] *Herbstman v. Eastman Kodak Co.*, 330 A.2d 384, 388 (N.J. Super. App. Div. 1974), *rev'd on other grounds*, 342 A.2d 181 (N.J. 1971).

[59] *Stauffer Chemical Co. v. Curry*, 778 P.2d 1083, 1093-94 (Wyo. 1989).

[60] *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1980).

[61] *Winter Panel Corp. v. Reichhold Chemicals, Inc.*, 823 F. Supp. 963, 973 (D. Mass. 1993).

[62] *Antz v. GAF Materials Corp.*, 719 A.2d 758, 761-62 (Pa. Super. Ct. 1998).

[63] *Chisholm v. J.R. Simplot Co.*, 495 P.2d 1113, 1116 (Idaho 1972).

[64] *Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 17 (1st Cir. 2001).

[65] *Guaranteed Constr. Co. v. Gold Bond Products*, 395 N.W.2d 332, 337 (Mich. Ct. App. 1986).

[66] *Malul v. Capital Cabinets, Inc.*, 740 N.Y.S.2d 828, 834 (N.Y. Civ. Ct. 2002).

[67] *Young v. Coca-Cola Bottling Co.*, 287 A.2d 345, 349 (R.I. 1972).

[68] *Featherall v. Firestone Tire and Rubber Co.*, 252 S.E.2d 358, 367 (Va. 1979).

[69] *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1375, 1377 (7th Cir. 1990).

product does not bar a buyer's action in Illinois, but it will reduce the buyer's damages.[70]

Assumption of the risk is a defense and bars recovery in Michigan,[71] Missouri,[72] Utah,[73] Virginia,[74] Washington [75] and Wyoming.[76] Massachusetts,[77] New Hampshire[78] and New York[79] recognize contributory negligence as a defense to breach of implied warranty actions.

Kentucky[80] and Rhode Island[81] provide that a seller is not liable for a breach of implied warranty action when the seller gives proper warnings on unavoidably unsafe products because the seller should not be liable for unfortunate consequences in supplying the public with a useful and desirable product. Hindrance of the contract is an affirmative defense to an implied warranty of merchantability action in Wisconsin.[82] Consequently, Lycoming may assert the defenses of misuse of the product, assumption of the risk, and

---

[70] *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1342-43 (Ill. App. Ct. 1989).

[71] *Jodway v. Kennametal, Inc.*, 525 N.W.2d 883, 890 (Mich. Ct. App. 1994).

[72] *Monsanto Co. v. Logisticon, Inc.*, 763 S.W.2d 371, 373-74 (Mo. Ct. App. 1989).

[73] *Rawson v. Conover*, 20 P.3d 876, 886 (Utah 2001) (citing Utah Code Ann. § 70A-2-316(3)(b)).

[74] *Goodbar v. Whitehead Bros.*, 591 F. Supp. 552, 567 (W.D. Va. 1984).

[75] *Seattle Flight Serv., Inc. v. City of Auburn*, 604 P.2d 975, 977-78 (Wash. Ct. App. 1979).

[76] *Murphy v. Petrolane-Wyoming Gas Serv.*, 468 P.2d 969, 975 (Wyo. 1970).

[77] *Cigna*, 241 F.3d at 17.

[78] *Stephan v. Sears Roebuck & Co.*, 266 A.2d 855, 858 (N.H. 1970).

[79] *Malul*, 740 N.Y.S.2d at 834.

[80] *McMichael v. American Red Cross*, 532 S.W.2d 7, 11 (Ky. 1975).

[81] *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 783 (R.I. 1988).

[82] *Fort Howard Paper Co.*, 901 F.2d at 1377.

disclaimer in certain states, but not in others.

This sampling of states' laws reveals the multiple differences affecting the applicability of the implied warranty of merchantability, the varying requirements for valid disclaimers and the limitation of damages. These differences permit Lycoming to raise defenses in some states and not in others. Therefore, because we cannot group the differing laws to apply them as a unit, a single nationwide class action would be unmanageable.

Even though the Third Circuit observed that the plaintiffs had not submitted a proposed management plan with their original motion for class certification and suggested that one "may be particularly important" in such a case, the plaintiffs still have not presented any proposal for managing a class action in this case. Consequently, we assume they have none. Thus, in light of the choice of law issues, we cannot conclude that a class action would be manageable.

## Conclusion

The plaintiffs have not satisfied the predominance and superiority requirement of Rule 23(b)(3). Therefore, the motion for nationwide class certification will be denied.